John Quinn *et ux. vs.* William T. Stedman, T. T.
Agnes M. Quinn *vs.* Same.

JUNE 7, 1929.

Present: Stearns, C. J., Rathbun, Sweeney, and Barrows, JJ.

Barrows, J. These were cases tried together. The cause of action alleged was negligence on the part of the town of South Kingstown in failing to keep a sidewalk in the

village of Peace Dale "safe" for travelers as required by General Laws 1923, Ch. 47, Sec. 16, and Ch. 96, Secs. 1 and 12. The wife's action was for personal injuries; the husband's for loss of services. The jury after a view and hearing testimony of plaintiff, defendant closing its case without offering any testimony, found for the wife in the sum of $400 and for the husband in the sum of $200.

Both cases are here solely on exception to the refusal of the trial judge to direct a verdict for the defendant, because of asserted failure to prove any negligence on the part of the town. The ground urged in support of such motion was that the defect established was so trivial that no danger therefrom ought reasonably to have been anticipated by the town. 43 C. J. 1010.

The street on which the accident occurred was one of the most traveled public highways in Peace Dale. Plaintiff Agnes had been over it many times. On the day in question, January 3, 1928, at 2 p. m., the sun was shining and plaintiff and her sister were walking along the sidewalk in front of Frederick Brown's residence. No ice or snow was on the walk, the traveled portion of which was of cement blocks five feet square, smooth and in good condition. Plaintiff was on the side of the walk nearer to the Brown property, but exactly how far from the edge of the cement does not appear. Two adjoining cement blocks were not flush. On the inner side of the walk one was $1\frac{1}{4}''$ higher than the other, creating a rectangular indentation. From this point the higher block, with difference in level constantly diminishing, followed the scoring line for two-thirds of its length at which point the two blocks were level and from that point the former higher block became increasingly lower until at the outer edge of the walk it was $\frac{1}{4}''$ lower. The cause of the inequality did not appear. The condition had existed for at least two years. Plaintiff had never noticed it nor had the town officials and no complaints had ever been made to them. Two witnesses testified to having stumbled but not fallen at the place in question.

The facts are strikingly like those of *Grass* v. *Seattle,* 100 Wash. 542 (1⅛″) and *Denver* v. *Burrows,* 76 Colo. 17 (1⅜″), in both of which the existence of such an irregularity was held as a matter of law not to constitute negligent upkeep by the town.

The liability of a municipality to keep its walks safe for travel is a statutory one. The requirement is only to keep them reasonably safe. Requirement of absolute safety would be an intolerable burden upon a municipality. *Morgan* v. *City of Lewiston,* 91 Me. 566 (2¼″); *Kawiecka* v. *City of Superior,* 136 Wis. 613 (2″). The town is not an insurer of the safety of its sidewalks. *Dayton* v. *Glaser,* 76 Oh. St. 471; *Beltz* v. *City of Yonkers,* 148 N. Y. 67 (2½″), *Meridian* v. *Crook,* 109 Miss. 700. Every possibility of an accident is not to be anticipated. The mere fact of an accident does not warrant an inference that the walk was not reasonably safe. The defect causing injury to a person to be actionable must be of such a character, in view of its location and the use made of the walk that it has attracted the attention of town officers or should cause them if exercising due care to anticipate danger therefrom to a pedestrian. *Hirst* v. *City of Missouri Valley,* 193 Iowa; 1225 (2 to 3″). Prior accidents when the question of negligence is debatable are admissible to show that a defect is likely to cause accidents but alone do not establish negligence in upkeep. *Gastel* v. *New York,* 194 N. Y. 15 (1″); *Terry* v. *Village of Perry,* 199 N. Y. 79 (1¼″).

Certain inequalities in walks are inevitable and such do not constitute negligent upkeep. *Horton* v. *Cray,* 133 Atl. 811 (R. I.) (1⅞″); *Beltz* v. *City of Yonkers, supra.* Negligence in keeping sidewalks safe is to be determined by what the town knew or ought to have known before and not after a pedestrian falls. If reasonable men may differ about whether an accident ought to have been anticipated, the question of the town's negligence is a proper question for submission to a jury. *Bieber* v. *St. Paul,* 87 Minn. 35 (1¼″).

In the case before us the trial court and jury saw the alleged defect. We have not this advantage nor may we express our opinion on the weight of the evidence because no motion for a new trial was filed. We know nothing of the trial court's attitude toward the verdict. We only know that the court considered the question of negligence one for the jury in the first instance.

The trial court distinguished the *Horton* case from the present case by reason of the fact that the defect was a depression and in the present case was "a sharp raising up without any warning as far as the walk is concerned." *Geer* v. *City of Des Moines*, 183 Iowa, 837 (1″ to 3″). We doubt whether the fact that the alleged defect is an elevation instead of a depression satisfactorily distinguishes the cases. *Northrup* v. *City of Pontiac*, 159 Mich. 250 (1½″). There may be the same danger in stepping into a depression on a walk where no depression is to be anticipated as would exist in stubbing one's toe upon an elevation in a smooth walk where such elevation is not reasonably to be anticipated. Abruptness, however, of either an elevation or depression may have a bearing in determining whether the town used due care in the upkeep of its walks. Where to draw the line in negligence cases between questions of law for the court and those of fact for the jury is often a difficult matter to determine. *Kawiecka* v. *City of Superior, supra.* We doubt if any general rule may be laid down. Each case must depend on its facts. *Bieber* v. *City of St. Paul, supra.*

We have carefully examined all the cases cited by defendant and many others. Cases are collected in 43 L. R. A. (N. S.) 1158 and 20 L. R. A. (N. S.) 640, as well as in 43 C. J. 1010, *supra.* It is true that, in a large number, defects of the type and as trivial as the one here involved have been held as a matter of law not to have been such as to charge a town with negligent upkeep. Juries have often so found as a matter of fact. Particular reference may be made to *Davidson* v. *City of N. Y.* 117 N. Y. Supp. 185 (2½″), one justice dissenting and saying the case should have gone to

a jury; *De Pledge* v. *N. Y.* 208 App. Div. 10 (2''), several dissenting; *Bennett* v. *St. Joseph*, 146 Mich. 382 (1⅛''); *Pomes* v. *McComb*, 121 Miss. 425 (2''); *Kleiner* v.˙*Madison*, 104 Wisc. 339 (2''); *Anderson* v. *Toronto*, 15 Ont. R. 643 (¾''); *Ewing* v. *Toronto*, 29 Ont. L. R. 197 (1'').

Michigan has strongly held that an elevation of less than two inches as a matter of law may not establish negligent upkeep by a town. A trivial elevation however may be dangerous and render the walk unsafe if known or if it ought reasonably to have been known by the town. As said in *Geer* v. *Des Moines*, *supra*, "Whether an obstruction or other defect in a walk is of a character to make the municipality which permits it to exist responsible for it, does not necessarily depend upon the size of the defect but upon the effects which may be reasonably apprehended from it upon persons who use the walk in a proper manner." In *Heaton* v. *Childs Co.*, 48 R. I. 255, the defect was the raising of a trapdoor in a sidewalk but two or three inches above the level of the sidewalk, creating a trap in which plaintiff in the semi-darkness caught her foot.

In Ohio the doctrine seems to be that the town is not liable for slight inequalities unless there is something peculiar and especially calculated to result in injury to the pedestrian. *Gibbs* v. *Girard*, 14 Ohio C. C. Rep. (N. S.) 81 (2''). See also *Terry* v. *Village of Perry*, *supra*.

In Massachusetts questions of negligence in upkeep of sidewalks seem to be submitted to the jury almost as a matter of course. *Redford* v. *City of Woburn*, 176 Mass 520 (1¼''); *Lamb* v. *City of Worcester*, 177 Mass. 82 (1½''); *Hamlet* v. *Inhabitants of Watertown*, 248 Mass. 473 (2½''); *Watertown* v. *Greaves*, 112 Fed. 183 (3'').

In view of our well settled practice if there was any reasonable view of the testimony upon which plaintiff might recover, the trial court would not have been warranted in directing a verdict for defendant. *Riley* v. *Tsagarakis*, 145 Atl. 12; *Koury* v. *Providence-Washington Ins. Co.*, 145 Atl. 448, 50 R. I. 118. We are unable to say that the court

erred in refusing to direct a verdict for defendant, whatever may be the doubt felt by some of the court as to the correctness of the jury's finding.

Defendant's exception to the refusal of the trial court to direct a verdict is overruled in each case and each case is remitted to the Superior Court for the entry of judgment on the verdict.

*James O. Watts*, for plaintiffs.
*Benjamin W. Case, Benjamin W. Case, Jr.*, for defendant.
*Hinckley, Allen, Tillinghast & Phillips*, for defendant.